NORMAN L. SMITH [SBN 106344]
nsmith@swsslaw.com
EDWARD J. MCINTYRE [SBN 80402]
emcintyre@swsslaw.com
SOLOMON WARD SEIDENWURM & SMITH, LLP
401 B Street, Suite 1200
San Diego, California 92101
Telephone: (619) 231-0303
Facsimile: (619) 231-4755

Attorneys for Mad Engine, Inc., a California corporation, and Sadik Albert Amato, an individual

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAD ENGINE, INC., a California corporation, and SADIK ALBERT AMATO, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>THE NEW YORK NETWORKS, INC., a Delaware corporation; NEW YORK NETWORKS, a Nevada corporation; and DAVID WALSH, an individual,<br><br>Defendant. | CASE NO. 08CV0558 DMS (LSP)<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND FOR MONEY DAMAGES AND RESTITUTION FOR SECURITIES AND COMMON LAW FRAUD**<br><br>**AND**<br><br>**DEMAND FOR JURY TRIAL** |

## I
## THE PARTIES

**The Plaintiffs.**

1. Mad Engine, Inc. is a California corporation with its principal place of business in San Diego, California.

2. Sadik Albert “Alby” Amato is a resident and citizen of California.

**The Defendants.**

3. To plaintiffs’ knowledge, The New York Networks, Inc. (New York Networks) is a Delaware corporation with its principal place of business in Las Vegas, Nevada.

4. David Walsh, an individual, is, to plaintiffs’ knowledge, a citizen and resident of Florida.

5. To plaintiffs’ knowledge, The New York Network, Inc. (NYN) is a Nevada corporation with its principal place of business in Carson City, Nevada.

## II
## JURISDICTION AND VENUE

6. This Court also has jurisdiction pursuant to the provisions of 28 U.S.C. §§ 1331 and 1337 in that it is a civil action arising under the Constitution, laws or treaties of the United States, specifically the Securities Act of 1933 and the Exchange Act of 1934, 15 U.S.C. §§ 77, *et seq.* and 15 U.S.C. §§ 78a, *et seq.*

7. This Court also has jurisdiction pursuant to the provisions of 28 USC § 1332(a)(1) because it is a civil action in which the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of California and citizens of different states, Nevada, Florida and Delaware.

8. Finally, this Court has declaratory judgment jurisdiction over this actual controversy pursuant to the provisions of 28 USC § 2201, *et. seq.*

9. Venue in this district is proper, pursuant to 28 USC § 1391(a)(2), because it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. It is also the district in which the parties entered into agreements at issue and in which

New York Networks is subject to personal jurisdiction, since *inter alia*, New York Networks conducts business in San Diego.

## III
## MATERIAL ALLEGATIONS

**Background.**

10. Alby Amato founded Mad Engine in April 1987 and is its president.

11. Mad Engine produces primarily T-shirts, knit tops, jackets, pajamas, both for itself and private label.

12. Mad Engine's success stems from its vast array of licenses. Its licensing partners include: Marvel Comics, Radio Days, The Fast and the Furious, West Coast Chopper, Smokey and the Bandit, Jaws, the Blues Brothers, Union Pacific, The Breakfast Club, Woody Woodpecker and Friends, Lost, The Emperor's New Clothes, Big Boy, Mr. Bill, Popeye and Friends, Felix the Cat, General Motors, Dodge and Mitsubishi.

13. New York Networks is a public reporting corporation, although its common stock was, to Amato and Mad Engine's knowledge, never traded on the NASDAQ National Market System or any other exchange.

14. New York Networks' sole purpose was to acquire the assets and assuming certain liabilities of the Nevada corporation NYN and its subsidiaries, and of Mad Engine.

15. To plaintiffs' knowledge David Walsh, and perhaps others, controlled New York Networks and he spearheaded and actively involved himself in its fundraising activities.

**The Mad Engine/New York Networks Agreement.**

16. On February 22, 2005, Mad Engine entered into a stock purchase agreement with New York Networks, by which New York Networks was to acquire Mad Engine's capital stock for $35 million: $17.5 million in cash; $17.5 million in New York Network stock.

17. David E. Walsh executed that agreement on behalf of New York Networks as its chairman.

**The Money.**

18. Thereafter, Walsh, both individually and through his companies, purported to raise

funds for New York Networks.

19. Mad Engine and Amato understand that Walsh transferred some $565,000 from investors in other ventures in which Walsh was involved to New York Networks.

20. In addition, Amato and Mad Engine understand that Walsh raised approximately $720,000 through the sale of New York Networks securities by way of private placement or otherwise.

21. Mad Engine and Amato have no personal knowledge what Walsh did with those funds, but understand that he may have transferred them to New York Networks.

**Sale of Securities**

22. Mad Engine and Amato are informed and believe that Walsh, both individually and through his companies, sold unregistered securities to investors, including Amato, in interstate commerce and using the instrumentalities of interstate commerce.

23. Those securities were not registered, Mad Engine and Amato are informed and believe, with either the Securities Exchange Commission or California securities authorities or the authorities of any jurisdiction.

24. In connection with the purchase and sale of those securities, Walsh, New York Networks, and NYN—Mad Engine and Amato are informed and believe—made material misrepresentations of fact and failed to disclose material facts, the disclosure of which was necessary to make what Walsh, New York Networks or NYN stated not false and misleading.

25. Walsh, New York Networks and NYN falsely represented in written solicitation materials given to prospective investors, including Amato, that Walsh and his companies intended to use the proceeds from the sale of those securities to acquire Mad Engine, to develop the "Dooly & Pals" property, to develop the "Next Big Star" and "Extreme Team" property, to develop the "Vamps" and "Sk8ratz" property and for other "acquisition opportunities." Amato, and he is informed other investors, relied on those material misrepresentations of fact and purchased those securities.

26. Mad Engine and Amato are informed and believe that Walsh, New York Networks and NYN continued to make such material misrepresentations of fact both orally and in writing

well after the sale of the securities.

27. Mad Engine and Amato are informed and believe based on information they only recently acquired that those representations were false and misleading representations of fact. In addition, Walsh, New York Networks and NYN failed to disclose material facts, the disclosure of which was necessary to make what they stated not false and misleading.

28. Mad Engine and Amato are informed and believe that Walsh, New York Networks and NYN knew that those material representations were false and misleading when they made them and knew that Amato and the other investors did not know that those representations were false.

29. Mad Engine and Amato are also informed and believe that Walsh, New York Networks and NYN withheld material information from investors, including Amato, that those investors were entitled to receive.

30. Mad Engine and Amato are informed and believe that Walsh, New York Networks and NYN did not intend to use the money raised to acquire Mad Engine or to develop the other "properties" they represented.

31. Rather, Mad Engine and Amato are informed and believe, based on information recently acquired, that Walsh and his companies intended to use the funds they raised for their own purposes, a fact they withheld from investors.

**Default and Termination of the Stock Purchase Agreement.**

32. New York Networks never completed its purchase of Mad Engine. Among other things, it never provided either the $17.5 million in cash or the $17.5 million in stock to which it had agreed.

33. Amato and Mad Engine, through counsel, have informed Walsh and New York Networks that the purchase agreement has terminated because of New York Networks' failure to perform.

34. Amato and Mad Engine have requested that Walsh and New York Networks acknowledge that the agreement for New York Networks to acquire Mad Engine is terminated.

35. Walsh and New York Networks have refused to acknowledge termination of any

such agreement.

**Accounting.**

36. Amato personally invested funds in New York Networks both by way of subscription and otherwise in an amount in excess of $75,000.

37. Mad Engine and Amato have asked Walsh and New York Networks for an accounting for funds it received—both funds that Amato invested or paid, as well as funds from other investors. Walsh and New York Networks have refused to account for those funds.

**FIRST CLAIM OF RELIEF**
**[DECLARATORY JUDGMENT]**

38. Mad Engine and Amato incorporate by this reference the allegations in paragraphs 1 through 37, above.

39. An actual case or controversy has arisen between Mad Engine and New York Networks arising out of the stock purchase agreement and the respective rights and duties of the parties.

40. Mad Engine asserts that the stock purchase agreement has terminated, among other things, because of New York Networks' failure to perform, and specifically, its failure to deliver $35 million--$17.5 million in cash; $17.5 million in stock.

41. Although Mad Engine has specifically told New York Networks that the agreement is terminated, New York Networks has failed and refused to acknowledge that termination.

42. Accordingly, pursuant to the provisions of 28 U.S.C. §§ 2201, *et seq.*, Mad Engine seeks a judgment declaring the rights and other legal relations between Mad Engine and New York Networks and specifically that the stock purchase agreement, and any other existing agreements, by which New York Networks or NYN purport to own any or all of Mad Engine or its stock have terminated.

**SECOND CLAIM OF RELIEF**
**[DECLARATORY JUDGMENT]**

43. Mad Engine and Amato incorporate by this reference the allegations in paragraphs 1 through 42, above.

44. An actual case or controversy has arisen between Amato, Mad Engine and New York Networks and Walsh.

45. Amato and Mad Engine—and Amato understands other investors—have invested funds in New York Networks.

46. Amato has sought to learn what has happened to those funds and who purports now to own them.

47. New York Networks and Walsh have failed and refused to provide any accounting for the funds that, as far as Amato or Mad Engine know, Walsh caused to be transferred to New York Networks.

48. Accordingly, pursuant to the provisions of 28 U.S.C. §§ 2201, *et seq.*, Amato and Mad Engine seek a judgment declaring the rights and other legal relations between themselves and New York Networks and Walsh concerning those funds had specifically a detailed accounting from New York Networks and Walsh for those funds.

**THIRD CLAIM FOR RELIEF**
**[FRAUD AND DECEIT]**

49. Mad Engine and Amato incorporate by this reference the allegations in paragraphs 1 through 48, above.

**Misrepresentations of Material Facts.**

50. Walsh, New York Networks and NYN made, and continued to make, representations of material fact to Mad Engine and Amato—and they believe other investors—both before defendants drew Amato into their investment scheme and he invested in the securities, and continuing thereafter.

51. Those representations were false.

52. Mad Engine and Amato are informed and believe that defendants knew that the representations were false when they made them or they made those representations recklessly without knowing whether they were true or false.

53. Mad Engine and Amato are informed and believe that defendants made those representations with an intent to defraud and deceive Mad Engine and Amato, and other investors,

and defendants made those representations to induce Mad Engine and Amato, and others, to rely on them and to act in reliance on them.

54. The true facts were that the defendants knew that Amato's investment—and the investments of others—would not be used either to acquire Mad Engine or to develop the "Dooley & Pals" property, to develop the "Next Big Star" and "Extreme Team" property, to develop the "Vamps" and "Sk8rats" and for other "acquisition opportunities."

55. Rather, Mad Engine and Amato are now informed and believe that Walsh and his companies intended to use any proceeds they raised from the sale of these securities or from moneys induced from investors for their own purposes.

56. When the defendants made the representations and omissions, Mad Engine and Amato were ignorant that the representations were false and believed them to be true.

57. Mad Engine and Amato relied on these representations and omission and as a result of those misrepresentations expended substantial sums of money.

58. Had Mad Engine and Amato known the true facts they would never have purchased securities from Walsh or invested in New York Networks and NYN.

**Suppression of Material Facts.**

59. Mad Engine and Amato are informed and believe that defendants knew the true, material facts concerning the investment and knew that they were material to Mad Engine and Amato, among other investors.

60. Mad Engine and Amato are informed and believe that defendants willfully and intentionally concealed and suppressed those material facts.

61. Mad Engine and Amato are informed and believe that defendants knew that Mad Engine and Amato—among other investors—did not know and could not reasonably discover these concealed and suppressed facts.

62. Mad Engine and Amato are informed and believe that defendants intentionally concealed and suppressed these facts with the intent to defraud Mad Engine and Amato, among other investors.

63. Mad Engine and Amato are informed and believe the other investors—were

unaware of these concealed and suppressed facts and would not have acted as they did if they had known the concealed and suppressed facts.

64. Because of Walsh and his companies' superior position, and their possession of material facts which only they knew and which they knew that Mad Engine and Amato—and other investors—did not know, and their knowledge that these facts were material to Mad Engine and Amato and any other investors, defendants had a duty to disclose these facts to Mad Engine and Amato and the other investors.

65. By virtue of their intentional misrepresentation and by virtue of their intentional concealment and suppression of material facts, defendants fraudulently induced Amato, among others, to purchase securities.

**False Promises.**

66. Mad Engine and Amato are informed and believe that the defendants made the promises stated in the written solicitation materials with the intent to defraud Mad Engine and Amato, and other investors, and that defendants made those promises to induce Mad Engine and Amato to rely on them and to act in reliance on them.

67. Mad Engine and Amato are informed and believe that the defendants made statements of fact, and suggestions and assertions as facts, that were not true and that the defendants knew were not true and did not believe to be true and had no reasonable grounds for believing to be true.

68. Mad Engine and Amato are informed and believe that the defendants suppressed facts they were bound to disclose, and gave information about other facts to Mad Engine and Amato, and to the other investors, that were likely to mislead Mad Engine and Amato, and other investors, because of the suppressed facts.

69. Defendants owed Mad Engine and Amato a duty of full disclosure, honesty and candor, as well as a duty to exercise reasonable care and to make a reasonable and diligent investigation of statements they made to Mad Engine and Amato and the other investors.

**Damages.**

70. Defendants committed fraud on Mad Engine and Amato, as a direct and proximate

result of which Mad Engine and Amato have suffered money damages in an amount which is not presently known but which will be proven at trial.

**Punitive Damages.**

71. The defendants' conduct constitutes an intentional misrepresentation, false promise, deceit and suppression of facts known to the defendants, all with the intention of causing injury to Mad Engine and Amato, and on information and belief the other investors, and was oppressive, fraudulent, malicious conduct as defined in California Civil Code § 3294 and Mad Engine and Amato should recover, in additional to actual damages, exemplary and punitive damages according to proof.

**FOURTH CLAIM FOR RELIEF**
**[VIOLATION OF FEDERAL SECURITIES LAWS]**

72. Mad Engine and Amato incorporate by this reference the allegations in paragraphs 1 through 71, above.

73. The defendants' conduct as alleged above violates the Securities Act of 1933, 15 U.S.C. §§ 77a, *et seq.* (the Act), and specifically Sections 12 and 17 of the Act, 15 U.S.C. §§ 77l and 77q, in that defendants used interstate commerce for fraud and deceit and offered and sold securities in interstate commerce with written material that included untrue statements of material fact and omissions of material fact.

74. The defendants' conduct as alleged above also violates the Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*, and specifically Section 10(b), 15 U.S.C. § 78j(b), and SEC Rule 10b-5, in that defendants used the means and instrumentalities of interstate commerce and, in connection with the purchase or sale of securities, used manipulative and deceptive devices in violation of Section 10(b) and Rule 10b-5.

75. As a direct and proximate result, Mad Engine and Amato, and other investors, have suffered money damages in an amount to be proven at trial.

**FIFTH CLAIM FOR RELIEF**
**[NEGLIGENT MISREPRESENTATION]**

76. Mad Engine and Amato incorporate by this reference the allegations in paragraphs

1 through 75, above.

77. Defendants made representations to Mad Engine and Amato, and others, about existing material facts.

78. Mad Engine and Amato are informed and believe that those representations were false.

79. Mad Engine and Amato are informed and believe that the defendants made those representations without a reasonable ground for believing them to be true.

80. Mad Engine and Amato are informed and believe that the defendants made those representations with the intent to induce Mad Engine and Amato, and others, to rely upon them.

81. Mad Engine and Amato were unaware of the falsity of the representations and acted in reliance on the truth of the representations and were justified in acting in relying upon those representations.

82. As a result of their reliance on the truth of those representations, Mad Engine and Amato have sustained and continue to sustain money damages according to proof at trial.

83. In engaging in the conduct alleged, defendants made representations and statements of material facts and omitted to state material fact necessary to make statements that they made, in light of the circumstances in which they were made, not misleading, and necessary to be stated in order that Mad Engine and Amato would be informed of all material facts necessary for Mad Engine and Amato’s decision to purchase the shares. Each defendant made such representations and statements with the intent to induce Mad Engine and Amato to rely on them.

84. In making the representations and statements and omitting to state material facts, the defendants acted negligently in that they made those representations and statements without a reasonable ground for believing them to be true and did not exercise due care in investigating to determine the existence of the material facts omitted.

85. At the time of the representations, statements, and omissions, Mad Engine and Amato were unaware that they were false and misleading and were unaware that there had been omissions of material facts. Mad Engine and Amato justifiably relied on these representations and statements and justifiably believed that there were no omissions of material facts. As a result,

Amato, and others, were induced to purchase securities.

86. As a direct and proximate result of the misrepresentations and omissions alleged, Mad Engine and Amato have suffered money damages in an amount which is not presently known but which will be proven at trial.

**SIXTH CLAIM FOR RELIEF**
**[VIOLATIONS OF CALIFORNIA CORPORATION CODE §§ 25400 AND 25500]**

87. Mad Engine and Amato incorporate by this reference the allegations in paragraphs 1 through 86, above.

88. The shares that defendants sold to Mad Engine and Amato were securities as § 25019 of the California Corporations Code defines the term.

89. Defendants are liable to Mad Engine and Amato under California Corporations Code §§ 25400(d) and 25500 because sold or offered to sell securities, and made statements or willfully participated in the making of such statements for the purposes of inducing Mad Engine and Amato, and others, to purchase such securities. Those statements were, at the time and in the light of the circumstances under which they were made, false or misleading with respect to material facts, and omitted to state material facts necessary in order to make the statement made, in the light of the circumstances under which they were made, not misleading.

90. Defendants knew or had reasonable grounds to believe that the statements and omissions were false or misleading.

91. The misrepresentations and material omissions proximately injured Mad Engine and Amato, and perhaps others, in an amount that is not presently known but which will be proven at trial.

**SEVENTH CLAIM FOR RELIEF**
**[VIOLATION OF CALIFORNIA CORPORATIONS CODE §§ 25401 AND 25501]**

92. Mad Engine and Amato incorporate by this reference the allegations in paragraphs 1 through 91, above.

93. The shares that defendants sold to Mad Engine and Amato were securities as § 25019 of the California Corporations Code defines the term.

94. Defendants are liable to Mad Engine and Amato under §§ 25401 and 25501 of the California Corporations Code because each offered to sell and sold securities in California by means of written or oral communications that included untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

95. The material misrepresentations and omissions proximately injured Mad Engine and Amato in an amount that is not presently known but which will be proven at trial.

**EIGHTH CLAIM FOR RELIEF**
**[FRAUD AND DECEIT—FOR RESCISSION AND RESTITUTION DAMAGES]**

96. Mad Engine and Amato incorporate by this reference the allegations in paragraphs 1 through 95, above.

97. As a direct and proximate result of defendants' fraud and deceit, as set forth above, Mad Engine and Amato are entitled to rescission and restitution damages, according to proof at trial.

**NINTH CLAIM FOR RELIEF**
**[VIOLATION OF BUSINESS & PROFESSIONS CODE §17200]**

98. Mad Engine and Amato incorporate by this reference the allegations in paragraphs 1 through 97, above.

99. By their conduct, defendants violated Business & Professions Code § 17200.

100. As a direct and proximate result of defendants' violation of Business & Professions Code § 17200, set forth above, Mad Engine and Amato are entitled to restitution damages according to proof at trial.

WHEREFORE, plaintiffs Mad Engine, Inc. and Sadik Albert Amato demand judgment against The New York Networks, Inc., a Delaware corporation; New York Networks, a Nevada corporation, and David Walsh, as follows:

1. For a declaratory judgment:

a. That all agreements between New York Networks and/or NYN, on the one hand, and Mad Engine, in the other to acquire Mad Engine in any

respect, have terminated.

b. That Alby Amato is entitled to an accounting and restitution of funds entrusted to David Walsh in connection with Walsh's attempt to obtain funding for the New York Networks or NYN;

2. For an accounting for funds received;

3. For compensatory damages in an amount to be proven at trial;

4. For punitive damages for an amount to be proven at trial;

5. For restitution in an amount to be proven at trial;

6. For attorneys fees and costs of suit; and

7. For such other and further relief as this Court deems just and proper.

DATED: May 23, 2008 SOLOMON WARD SEIDENWURM & SMITH, LLP

By: */s/ Edward J. McIntyre*
NORMAN L. SMITH
EDWARD J. MCINTYRE
Attorneys for Mad Engine, Inc., and Sadik Albert Amato

**JURY DEMAND**

Mad Engine, Inc. and Sadik Albert Amato hereby demand a jury trial of all claims triable by a jury.

DATED: May 23, 2008 SOLOMON WARD SEIDENWURM & SMITH, LLP

By: */s/ Edward J. McIntyre*
EDWARD J. MCINTYRE
Attorneys for Plaintiff, Mad Engine, Inc. and Sadik Albert Amato